UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.                                            **MEMORANDUM & ORDER**
                                              16-CR-147 (WFK)

BERNARD THOMAS,

                 Defendant.
-----------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On October 21, 2016, a jury found Bernard Thomas ("Defendant") guilty of one count of Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 51 months of incarceration, 3 years of supervised release, and payment of a $100.00 special assessment.

## BACKGROUND

On March 25, 2016, the United States filed an Indictment charging Defendant with one count of Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1). ECF No. 7. Beginning on August 1, 2016, Defendant was tried by a jury on the sole count of the Indictment in front of the Honorable Edward R. Korman. *See* ECF Nos. 64-66. On August 3, 2016, the jury reported it was unable to reach a unanimous verdict, and Judge Korman declared a mistrial. ECF No. 66. The matter was subsequently transferred to this Court.

On September 9, 2016, the Government filed a Superseding Indictment charging Defendant with one count of Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1). ECF No. 79. Defendant was thereafter tried in this Court on the sole count of the Superseding Indictment and, on October 21, 2016, the jury returned a verdict of guilty. ECF No. 101.

1

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### II. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on August 30, 1965, in Far Rockaway, New York, where he lived in a low-income household with his mother and his six maternal half-siblings. *See* Presentence Investigation Report ("PSR") ¶¶ 57-59, ECF No. 109. Growing up, Defendant's biological

2

father provided him with financial support but was not otherwise involved in Defendant's upbringing. *Id.* ¶ 57. Defendant is close to his stepfather, who lives in Alabama with Defendant's mother, and who Defendant considers a father figure. *Id.* Defendant reports he also is close with his maternal half-siblings, although his half-sister reported Defendant is not in regular contact with most of the siblings. *Id.* ¶¶ 58, 60. One of Defendant's half-brothers reported he has a good relationship with Defendant and Defendant's son. *Id.* ¶¶ 60, 63. Defendant does not maintain relationships with his three paternal half-siblings, as they did not inform him when his father died in 2014. *Id.* ¶¶ 57, 59.

Defendant lived in his mother's home until he was first arrested at the age of sixteen. *Id.* ¶ 61. Thereafter, he moved between correctional facilities, half-way houses, and the homes of friends or girlfriends, and was also homeless for periods of time. *Id.* ¶¶ 61-62. As to his education, Defendant reports that he attended Manhattan High School in New York, New York, and received good grades, *id.* ¶ 80, but he did not graduate and instead earned his GED in 1990, *id.* ¶ 82. Defendant also received carpentry, construction, and electrician training in a Jobs Corps program in Morganfield, Kentucky, *id.* ¶ 81, and took college courses while incarcerated in the 1990s, *id.* ¶ 83. Defendant worked for a construction company for six months in 1997, but he did not report any other formal employment. *Id.* ¶ 84.

In 1999, Defendant married Lorraine Dawson, an employee of the Metropolitan Transportation Authority; he was incarcerated at Riker's Island at the time. *Id.* ¶ 63. The couple has one son together, who is now nineteen. *Id.* Although Defendant and his wife are currently estranged, Defendant says he is in contact with his son and financially supports him when he is able, *id.*, and one of Defendant's half-brothers reports Defendant's son maintains relationships with Defendant's extended family, *id.* ¶ 63.

3

Defendant began using crack cocaine in or about 1989 and reports that he used the drug daily when he could afford to do so, often financing this habit through theft. *Id.* ¶ 76. Defendant also reported drinking alcohol often, *id.* ¶ 74, using marijuana occasionally, *id.* ¶ 74, and using opiates daily, *id.* ¶ 77, in the period leading up to the instant arrest. Defendant has participated in a number of substance abuse treatment programs while incarcerated, and has even served as a facilitator in substance abuse programs. *Id.* ¶ 78. Defendant has also been treated for depression, as well as aggression and anger management, while in and out of custody. *Id.* ¶¶ 71-73.

As noted, Defendant was arrested for the first time at the age of sixteen, and was ultimately convicted of attempted resisting arrest. *Id.* ¶ 23. Over the next four decades, he developed an extensive history of criminal conduct. *Id.* ¶¶ 23-47. Defendant's adult criminal convictions include possession of stolen property, *id.* ¶ 24, sexual abuse in the first degree, *id.* ¶ 26, attempted robbery, *id.* ¶ 31, multiple counts of criminal sale or possession of a controlled substance, *id.* ¶¶ 32-35, and multiple counts of petit larceny, *id.* ¶¶ 38, 40-43. In 1998, Defendant was convicted of two counts of robbery in the first degree, one count of assault in the first degree, and one count of reckless endangerment, after he and an accomplice, armed with handguns, forcibly robbed one victim and critically wounded another. *Id.* ¶ 44. Defendant was sentenced to sixteen years in custody—during which he incurred a number of disciplinary infractions—and was paroled on January 22, 2014. *Id.* After his release, Defendant's wife acquired an order of protection against him due to threats he made against her; Defendant was twice arrested for violating this order. *Id.* ¶¶ 44-46.

On February 29, 2016, Defendant notified the New York Policy Department ("NYPD") that he was in possession of shell casing from a recent shooting that had occurred at the Queensbridge Houses in Queens, New York. *Id.* ¶¶ 3-4. Defendant further told NYPD officers

4

that an individual named "Holloway" had asked Defendant to hold a firearm on the day of the shooting but that Defendant had returned the firearm to Holloway that same evening. *See id.* ¶¶ 3-5. Defendant was arrested by NYPD officers and later transferred to federal custody. *Id.* ¶ 7.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter him and others from engaging in similar criminal activity in the future. The Court takes into account Defendant's extensive criminal history as well as his need for treatment for addiction, depression, and anger management.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant was convicted of one count of Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1). The Government and U.S. Probation Department argue the Armed Career Criminal Act ("ACCA") applies to Defendant's statutory sentencing range such that he would be subject to a mandatory minimum sentence of fifteen years of incarceration. *See* 18 U.S.C. § 924(e) (requiring imposition of sentence of imprisonment for "not less than fifteen years" upon any person who violates § 922(g) and has "three previous convictions" for violent

felonies). Of Defendant's prior convictions, the Government and U.S. Probation Department identify three which they contend are "violent felonies" within the meaning of the ACCA: (1) a 1983 conviction for Sexual Abuse in the First Degree, PSR ¶ 26; (2) a 1987 conviction for Attempted Robbery in the Third Degree, PSR ¶ 31; and (3) a 1998 conviction for two counts of Robbery in the First Degree, one count of Assault in the First Degree, and one count of Reckless Endangerment in the First Degree, PSR ¶ 44.[1] Of these enumerated convictions, at least two—Sexual Abuse in the First Degree and Attempted Robbery in the Third Degree—do not qualify as crimes of violence under controlling federal and state law.[2]

---

[1] Predicate felony convictions must be "committed on occasions different from one another" for the ACCA to apply, 18 U.S.C. § 924(e), so the incident described in PSR ¶ 44 can only give rise to one predicate "violent felony" conviction, even if multiple counts of conviction qualified as such under the ACCA.

[2] Maya Angelou once famously opined that "when someone shows you who they are, [you should] believe them the first time." Here, Defendant's history may indeed demonstrate that he is a "career criminal" as commonly understood, but the question before the Court is a significantly less straightforward one: who is the person he has shown himself to be under the laws of the United States of America.

In August 2016, the United States Sentencing Commission, chaired by the Honorable Patti B. Saris, issued a report to Congress on career offender sentencing enhancements, including the ACCA. U.S. Sentencing Comm'n, *Report to the Congress: Career Offender Sentencing Enhancements* (Aug. 2016), *available at* https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/criminal-history/201607_RtC-Career-Offenders.pdf. This report was the end product of "a multi-year study of statutory and guideline definitions relating to the nature of a defendant's prior conviction and the impact of such definitions on the relevant statutory and guideline provisions." *Id.* at 2. After reviewing the impact of the career offender enhancements, the Commission expressed concern that the "career offender directive fails to meaningfully distinguish among career offenders with different types of criminal records and has resulted in overly severe penalties for some offenders," and recommended that the "career offender directive" would best serve its aims if focused primarily on "those offenders who have committed at least one 'crime of violence.'" *Id.* at 3-4. Among other things, the Commission recommended that Congress adopt a single definition of "crime of violence" for all federal criminal purposes. *See id.* at 47-55. That has not yet, and indeed may never, come to pass. And so it falls to the courts to do our level best with the mandates before us.

Defendant's case reflects the overall complexity of applying the career offender Guideline, the ACCA, and other similar recidivist enhancements. Federal statutes and the Sentencing Guidelines currently contain a patchwork of definitions that attempt to specify what prior offenses are and are not "crimes of violence" or "violent felonies" for the purposes of determining whether recidivist enhancements should apply. The present case requires the Court to apply complex legal tests—particularly the so-called categorical approach—to determine whether violations of various state statutes meet the definition of a "crime of violence" or a "violent felony," an exercise that results in confusion and the inefficient use of resources on both the part of the litigants and the courts. The categorical approach was crafted by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), and subsequently spawned 27 years of extensive litigation, including several return trips to the Supreme Court, to determine how exactly it worked. Not surprisingly, the federal Probation officers who are charged with determining in the first instance whether or not particularly prior convictions do or do not qualify as federal predicates experience and express particular frustration with the categorical approach, in part because it requires a legalistic assessment of a vast universe of statutes of conviction that are as varied as the states that enact them and the state and federal courts that have previously interpreted them in various contexts. This process frequently also requires Probation to obtain

To determine whether a past conviction was for a "violent felony" within the meaning of the ACCA, the Court analyzes the statute of conviction and determines whether it includes an element of force such that the defendant must have been found by a jury to have committed a violent act within the meaning of the ACCA. *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 2281 (2013). If the statute in question—or relevant subsection thereof—includes an element of "physical force," the Court must then determine if the least amount of force that would fulfill that requirement necessarily was "violent physical force" such that it arises to the level of a "violent felony." *Johnson v. United States*, 559 U.S. 133, 144 (2010) ("*Johnson I*"). This Court is bound by the state court's interpretation of the underlying statute. *Id.* at 138.

With regard to the conviction for Sexual Abuse in the First Degree, Defendant was convicted under New York Penal Law § 130.65(01), which at the time prohibited "subject[ing] another person to sexual contact . . . [b]y forcible compulsion." N.Y. Penal Law § 130.65 (McKinney); *see* Add. to PSR at 5-6. In *People v. Mack*, 18 N.Y.3d 929, 932 (2012), the New York Court of Appeals found that "forcible compulsion" could exist where a victim was "hedge[d] in" by the coordinated actions of those around her and then subjected to unwanted sexual touching. The Appellate Division, Third Department, has also found that "forcible compulsion is not synonymous with violence," *People v. Luckette*, 4 N.Y.S.3d 720, 722 (3d Dep't 2015) (quoting *People v. Peraza*, 733 N.Y.S.2d 510, 513 (3d Dep't 2001)), and therefore

---

documents relating to prior convictions from the original sentencing court, a process that is particularly difficult for older convictions, an issue Probation faced in this case.

*Johnson v. United States*, 559 U.S. 133 (2010) further complicated this analysis by finding that the so-called residual clause of the ACCA was unconstitutional, which called into question whether the residual clauses in other federal recidivist statutes are also vulnerable under the same reasoning as applied in *Johnson*. Indeed, since that decision, at least two circuit courts have found that the residual clause of Section 16 is similarly unconstitutional. *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), *cert. granted*, 137 S. Ct. 31, 195 L. Ed. 2d 902 (2016); *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015). What is clear is that this process is getting more, rather than less, complex over time and so Probation, the parties, and, ultimately, the Court must continue to do their best to navigate this quagmire in order to serve the ends of justice.

the elements of the statute can be met where there is non-violent, non-consensual sexual contact, *id.* Defendant's conviction under New York Penal Law § 130.65(01) therefore does not qualify as a "crime of violence" under the ACCA because the "minimum criminal conduct necessary for conviction," *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006), as determined by the state courts of appeal fails to meet the standard set forth in *Johnson I*, which is "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson I*, 599 U.S. at 140.

Defendant's conviction for Attempted Robbery in the Third Degree also does not qualify as a "violent felony." Under New York Penal Law § 160.05, "[a] person is guilty of robbery in the third degree when he forcibly steals property." N.Y. Penal Law § 160.05 (McKinney). New York Appellate Courts have found on many occasions that a defendant may be convicted under this statute even where no violent physical force is applied.[3] For instance, in *People v. Bennett*, 621 N.Y.S.2d 834, 834 (1st Dep't 1995), the Appellate Division, First Department, found that "[t]he requirement that a robbery involve the use, or the threat of immediate use, of physical force . . . does not mean that a weapon must be used or displayed or that the victim must be physically injured or touched." Further, in *United States v. Johnson*, 220 F. Supp. 3d 264, 272 (E.D.N.Y. 2016) (Cogan, J.), the court reviewed state court precedent in light of *Johnson I*, and found that "a conviction for robbery in the third degree under New York Penal Law § 160.05 does not qualify as a crime of violence" under the parallel provisions of the Sentencing Guidelines. The Court agrees. Consequently, Defendant does not have three prior convictions

---

[3] Where the New York Court of Appeals has not ruled on a particular question, "the decisions of [New York State's Appellate Division] are helpful indicators" for ascertaining how that Court would rule, and this Court cannot disregard such decisions unless "convinced by other persuasive data that the [New York Court of Appeals] would decide otherwise." *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000).

for "violent felonies" within the meaning of the ACCA, and the ACCA's sentencing enhancements do not apply here.

Accordingly, Defendant's offense is governed not by § 924(e), but by § 924(g), and is punishable by up to ten years of imprisonment. 18 U.S.C. § 924(a)(2). If a term of imprisonment is imposed, the Court may also impose a term of supervised release of up to three years. *See id.* § 3583(b)(1). Defendant may also be required to pay a maximum fine of $250,000.00, *id.* § 3571(b), and must pay the mandatory special assessment of $100.00, *id.* § 3013. Defendant is eligible for a term of probation of between one and five years. *Id.* § 3561(a)(2).

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

Sentencing Guidelines § 2K2.1 applies to violations of 18 U.S.C. § 922(g)(1) and, because Defendant committed the instant offense subsequent to sustaining one felony conviction of a crime of violence—namely, Robbery in the First Degree, PSR ¶ 44—sets a base offense level of twenty.[4] *See* United States Sentencing Commission, *Guidelines Manual*, §§ 2K2.1(a)(4)(A) & cmt. n.1, 4B1.2(a)(2) (Nov. 2016) ("USSG").[5]

---

[4] For the purposes of this analysis, only previous convictions that receive criminal history points are considered. USSG § 2K2.1 cmt. n.10.

[5] Defendant argues that applying the 2016 version of the Guidelines presents an *ex post facto* problem because generic robbery is specifically enumerated as a crime of violence in the 2016 version but not in the 2015 version. *Compare* USSG § 4B1.2(a)(2) (Nov. 2016) (listing robbery as crime of violence), *with* USSG § 4B1.2(a)(2) (Nov. 2015) (not listing robbery, but including residual clause). The result would be the same under the 2015 version, however, because the Second Circuit has held that First Degree Robbery qualifies as a "crime of violence" under the residual clause in the 2015 version of Guidelines § 4B1.2(a)(2). *United States v. Jones*, 15-CR-1518, 2017 WL 4456719, at *5 (2d Cir. Oct. 5, 2017). Therefore, no *ex post facto* issue exists.

9

The Government and Probation Department contend that the Court should find Defendant also used the ammunition at issue here in connection with an attempted first degree murder and therefore apply the base level for that offense, which Defendant was not charged with, pursuant to Guidelines §§ 2K2.1(c)(1) and 2X1.1. This the Court cannot do, for there is not enough evidence to conclude, even by a preponderance, that Defendant attempted a first degree murder. First, there is no evidence from which the Court may reliably identify Defendant as the shooter in the incident the Government characterizes as attempted first degree murder. Indeed, at Defendant's trial for the instant offense, two NYPD detectives—both of whom were familiar with Defendant's appearance and one of whom had seen Defendant on the day of the shooting—testified that they could not identify Defendant as the shooter from either the shooting itself or security camera footage that captured it. In addition, neither the victim—who was shown on the same footage engaging in a verbal altercation with the shooter prior to the shooting—nor another eyewitness identified Defendant as the shooter to detectives after the incident or in later viewings of a photo array. Absent any testimony or evidence identifying Defendant as the shooter, the Court has no basis to, and thus cannot, conclude that he was.

Second, even if Defendant had been identified as the shooter, there is no evidence from which the Court may conclude that he had the requisite intent to commit first degree murder— namely, both malice aforethought, premeditation, and deliberation. *See United States v. Cespedes*, 11-CR-1032, 2015 WL 4597539, at *2 (S.D.N.Y. July 30, 2015) (Engelmayer, J.). Although premeditation can often by proven by circumstantial evidence, including: "(1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, planning activity; (2) facts about the defendant's prior relationship and conduct with the victim from which motive may be inferred;

and (3) facts about the nature of the killing from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design," *id.* at *3 (quoting *United States v. Blue Thunder*, 604 F.2d 550, 553 (8th Cir. 1979)), no such evidence was presented at trial here. Instead, the available evidence—security camera footage and the testimony of an eyewitness—indicates only that the shooter and victim engaged in a verbal dispute, calling each other names, before a shot was fired. Without more, such limited evidence does not permit the inference that the shooter possessed a "cool mind" and had some appreciable time for reflection and consideration before execution of the act, as is required for first degree murder. *See id.* Nor may it be inferred that Defendant had any motive to kill the victim. If anything, the fact that the shooter confronted the victim verbally before firing supports the conclusion that he had not planned to kill him—otherwise he would have shot first and asked questions later. Accordingly, the Court cannot find Defendant had the *mens rea* to commit first degree murder.

Finally, numerous courts, including the Second Circuit, have expressed doubt as to the constitutionality of significantly enhancing a defendant's sentence based on conduct found by only a preponderance of the evidence. *See, e.g., United States v. Cordoba-Murgas*, 233 F.3d 704, 708 (2d Cir. 2000) ("[I]n certain cases, the enhancement of a sentence based upon a defendant's 'relevant conduct,' if done without regard to the weight of the evidence proving the relevant conduct, may result in a total term of incarceration which is excessive, inappropriate, and unintended under Sentencing Guidelines."); *United States v. Gigante*, 94 F.3d 53, 56 (2d Cir. 1996) ("With regard to upward adjustments, a sentencing judge should require that the weight of the factual record justify a sentence within the adjusted Guidelines range. In doing so, the Court may examine whether the conduct underlying multiple upward adjustments was proven by a

standard greater than that of preponderance, such as clear and convincing or even beyond reasonable doubt where appropriate."). Such concerns are amplified where, as here, the attempted murder allegation is not even supported by a preponderance, but it could potentially increase Defendant's sentence exponentially. For the foregoing reasons, the Court declines to apply the cross reference requested by the Government and Probation department.

Therefore, Defendant's total offense level is twenty. Given a total offense level of twenty and a criminal history category of three, the Guidelines suggest a term of imprisonment of between forty-one and fifty-one months. *Id.* ch. 5, pt. A. The Guidelines further recommend a term of supervised release of between one and three years, *id.* § 5D1.2(a)(2); a fine of between $15,000.00 and $150,000.00, *id.* § 5E1.2(c); and payment of the costs of prosecution, *id.* § 5E1.5. Defendant is ineligible for probation under the Guidelines. *See id.* § 5B1.1 cmt. n.2.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), does not apply.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case, *see* 18 U.S.C. § 3663.

## CONCLUSION

A sentence of 51 months of incarceration, 3 years of supervised release, and payment of the $100.00 mandatory assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the Addendum to the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 8, 2017
      Brooklyn, New York