UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,
                  v.

BERNARD THOMAS,

                  Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
16-CR-147 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On October 21, 2016, a jury found Bernard Thomas ("Defendant") guilty of one count of Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1). On December 7, 2018, the Court sentenced Defendant to 51 months of incarceration, 3 years of supervised release, and payment of a $100.00 special assessment. This Court now re-sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 51 months of incarceration, 3 years of supervised release, and payment of a $100.00 special assessment.

## BACKGROUND

On March 25, 2016, the United States filed an Indictment charging Defendant with one count of Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1). ECF No. 7. Beginning on August 1, 2016, Defendant was tried by a jury on the sole count of the Indictment in front of the Honorable Edward R. Korman. *See* ECF Nos. 64-66. On August 3, 2016, the jury reported it was unable to reach a unanimous verdict, and Judge Korman declared a mistrial. ECF No. 66. The matter was subsequently transferred to this Court.

On September 9, 2016, the Government filed a Superseding Indictment charging Defendant with one count of Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1). ECF No. 79. Defendant was thereafter tried in this Court on the sole count of the Superseding Indictment and, on October 21, 2016, the jury returned a verdict of guilty. ECF No.

1

101. The Court sentenced Defendant on December 8, 2017. *See* Memorandum and Order at 1, ECF No. 129.

On March 20, 2019 the United States Court of Appeals for the Second Circuit affirmed Defendant's conviction, vacated his sentence, and remanded the case to this Court for resentencing. *See United States v. Thomas*, 765 F. App'x 553, 555 (2d Cir. 2019) (summary order). Specifically, the Second Circuit instructed the Court to determine: (1) whether Defendant was convicted under subdivision 1 of the New York Sexual Abuse Act in the First Degree (N. Y. Penal Law § 130.65), and if so, whether that conviction qualifies as a violent felony warranting a sentencing enhancement under the Armed Career Criminal Act ("ACCA"), *id.* at 10-11; and (2) whether the special conditions of release requiring Defendant submit to a psychosexual evaluation and comply with sexual offender registration requirements are appropriate in this case.

The Court held a status conference to discuss the resentencing issues, *see* Minute Entry, dated March 25, 2019, and set a briefing schedule with respect to those issues, *see* Order, ECF No. 175. On March 29, 2019, the Court granted the Government's motion to direct the Clerk of Court for Queens Supreme Court to provide the government and Probation access to the file regarding Defendant's conviction for sexual abuse for inspection and copy. *See* ECF No. 177.

## DISCUSSION

The Court first addresses the Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2) and then the proposed special conditions of supervised release.

I. **Sentencing**

   A. **Legal Standard**

   18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the United States Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* "The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).

   B. **Analysis**

   Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. This Court addresses each in turn.

   1. **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

   The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

   Defendant was born on August 30, 1965, in Far Rockaway, New York, where he lived in a low-income household with his mother and his six maternal half-siblings. *See* Revised Presentence Investigation Report ("Revised PSR") ¶¶ 55-57, ECF No. 183. Growing up,

Defendant's biological father provided him with financial support but was not otherwise involved in Defendant's upbringing. *Id.* ¶ 55. Defendant is close to his stepfather, who lives in Alabama with Defendant's mother, and who Defendant considers a father figure. *Id.* Defendant reports he also is close with his maternal half-siblings, although his half-sister reported Defendant is not in regular contact with most of the siblings. *Id.* ¶¶ 56, 58. One of Defendant's half-brothers reported he has a good relationship with Defendant and Defendant's son. *Id.* ¶¶ 58, 61. Defendant does not maintain relationships with his three paternal half-siblings, as they did not inform him when his father died in 2014. *Id.* ¶¶ 55, 57.

Defendant lived in his mother's home until he was first arrested at the age of sixteen. *Id.* ¶¶ 22, 59. Thereafter, he moved between correctional facilities, half-way houses, and the homes of friends or girlfriends, and was also homeless for periods of time. *Id.* ¶¶ 59-60. As to his education, Defendant reports he attended Manhattan High School in New York, New York, and received good grades, *id.* ¶ 78, but he did not graduate and instead earned his GED in 1990, *id.* ¶ 80. Defendant also received carpentry, construction, and electrician training in a Jobs Corps program in Morganfield, Kentucky, *id.* ¶ 79, and took college courses while incarcerated in the 1990s, *id.* ¶ 81. Defendant worked for a construction company for six months in 1997, but he did not report any other formal employment. *Id.* ¶ 82.

In 1999, Defendant married Lorraine Dawson, an employee of the Metropolitan Transportation Authority; he was incarcerated at Riker's Island at the time. *Id.* ¶ 61. The couple has one son together, who is now 21 years old. *Id.* Although Defendant and his wife are currently estranged, Defendant says he is in contact with his son and financially supports him when he is able. *Id.*

Defendant has a history of substance abuse. Defendant began using crack cocaine in or about 1989 and reports that he used the drug daily when he could afford to do so, often financing this habit through theft. *Id.* ¶ 74. Defendant also reported drinking alcohol often, *id.* ¶ 72, using marijuana occasionally, *id.*, and using opiates daily, *id.* ¶ 75, in the period leading up to his arrest. Defendant has participated in a number of substance abuse treatment programs while incarcerated and has even served as a facilitator in substance abuse programs. *Id.* ¶ 76. Defendant has also been treated for depression, as well as aggression and anger management, while in and out of custody. *Id.* ¶¶ 69-71.

As noted, Defendant was arrested for the first time at the age of sixteen and was ultimately convicted of attempted resisting arrest. *Id.* ¶ 22. Over the next four decades, he developed an extraordinary, extensive history of criminal conduct. *Id.* ¶¶ 22-46. Defendant's adult criminal convictions include possession of stolen property, *id.* ¶ 23, sexual abuse in the first degree, *id.* ¶ 25, attempted robbery, *id.* ¶ 30, multiple counts of criminal sale or possession of a controlled substance, *id.* ¶¶ 31-34, and multiple counts of petit larceny or attempted petit larceny, *id.* ¶¶ 37-42. In 1998, Defendant was convicted of two counts of robbery in the first degree, one count of assault in the first degree, and one count of reckless endangerment, after he and an accomplice, armed with handguns, forcibly robbed one victim and critically wounded another. *Id.* ¶ 43. Defendant was sentenced to sixteen years in custody—during which he incurred a number of disciplinary infractions—and was paroled on January 22, 2014. *Id.* After his release, Defendant's wife acquired an order of protection against him due to threats he made against her; Defendant was twice arrested for violating this order. *Id.* ¶¶ 44-45.

Regarding the instant offense, on February 29, 2016, Defendant notified the New York Police Department ("NYPD") that he was in possession of a shell casing from a recent shooting

that had occurred at the Queensbridge Houses in Queens, New York. *Id.* ¶¶ 3-4. Defendant further told NYPD officers that an individual named "Holloway" had asked him to hold a firearm on the day of the shooting but that he had returned the firearm to Holloway that same evening. *See id.* ¶¶ 3-5. Defendant was arrested by NYPD officers and later transferred to federal custody. *Id.* ¶ 7.

According to Bureau of Prisons SENTRY database, Defendant has been in federal custody since March 4, 2016 and was released to a residential re-entry center on March 6, 2019. *Id.* ¶ 62. Defendant has been enrolled in several programs, including a child support seminar class, a repeat offender program, and drug counseling. *Id.* Defendant worked as a unit orderly for three months. While in custody, Defendant incurred one infraction for telephone abuse. *Id.*

### 2. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter him and others from engaging in similar criminal activity in the future. The Court takes into account Defendant's extraordinary, extensive criminal history as well as his need for treatment for addiction, depression, and anger management.

### 3. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant was convicted of one count of Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1). By statute, Defendant faces a maximum term of imprisonment of ten years. *See* 18 U.S.C. § 924(a)(2) ("Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both.").

Defendant also faces a maximum term of supervised release of three years, *id.* § 3583(b)(2); a maximum fine of $250,000.00, *id.* § 3571(b); and a special assessment of $100.00, *id.* § 3013. Defendant is statutorily eligible for between one- and five-years' probation because the offense for which he was found guilty is a Class C felony. *Id.* § 3561(c)(1).

### 4. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

Sentencing Guideline § 2K2.1 applies to violations of 18 U.S.C. § 922(g)(1). Because Defendant committed the instant offense subsequent to sustaining one felony conviction of a crime of violence—namely, Robbery in the First Degree—Guideline § 2K2.1(a)(4)(A) sets the base offense level at 20. *See* United States Sentencing Commission, *Guidelines Manual* ("USSG"), §§ 2K2.1(a)(4)(A) & cmt. n.1, 4B1.2(a)(2) (Nov. 2016).

All parties agree the ACCA does not apply to Defendant's statutory sentencing range such that he would be subject to a mandatory minimum sentence of fifteen years of incarceration.

7

*See* 18 U.S.C. § 924(e) (requiring imposition of sentence of imprisonment for "not less than fifteen years" upon any person who violates § 922(g) and has "three previous convictions" for violent felonies). Of Defendant's prior convictions, the Second Circuit identified two that qualify as "violent felonies" within the meaning of the ACCA: (1) a 1989 conviction for Attempted Robbery in the Third Degree; and (2) a 1998 conviction for two counts of Robbery in the First Degree, *See Thomas*, 765 F. App'x at 549 (holding "all degrees of robbery and attempted robbery under New York law constitute violent felonies within the meaning of the ACCA"). Less clear was whether Defendant's 1983 conviction for Sexual Abuse in the First Degree, New York Penal Law ("NYPL") § 130.65(01), also qualified as a crime of violence. NYPL § 130.54 is a "divisible" offense in that it covers several types of conduct, defined in distinct statutory subdivisions. *Id.*; *see also* N.Y. Penal Law § 130.65 (McKinney).

The Second Circuit instructed this Court to determine upon remand whether Defendant was convicted under subdivision (1), which requires "forcible compulsion," and if so, whether a violation of that provision is a violent felony under recent Second Circuit case law. *Id.* After reviewing the relevant Queens Supreme Court file, the Government and Probation determined Defendant was not convicted under subdivision 1. *See* Gov't Resentencing Mem. ("Gov't Mem.") at 4, ECF No. 181. Among the items reviewed were a Waiver of Indictment, signed by Defendant, and an Information, charging him with Sexual Abuse in the First Degree. *Id.* at 4 n.3. The language in the Information largely tracks the language of subdivision 2 of N.Y. Penal Law § 130.65. *Compare* Gov't Mem., Ex. A at 5, ECF No. 181-1 (accusing Defendant of "the crime of sexual abuse in the first degree [whereas] Defendant ... subjected [] a person who was incapable of consent by reason of being physically helpless, to sexual contact"), *with* N.Y. Penal Law § 130.65(2) ("A person is guilty of sexual abuse in the first degree when he or she subjects

another person to sexual contact . . . when the other person is incapable of consent by reason of being physically helpless . . . ."). Because "it is unlikely that the defendant would have waived indictment and pleaded guilty to a crime not charged in the Information," the Government concluded Defendant was not convicted under subdivision (1). Gov't Mem. at 4 n.4. Accordingly, this Court need not determine whether Defendant's conviction for Sexual Abuse in the First Degree qualifies as a violent felony to warrant the sentencing enhancement under the ACCA.

Indeed, all parties agree the ACCA does not apply. *See id.* at 4; Def. Resentencing Mem. ("Def. Mem.") at 2-3, ECF No. 184; PSR ¶¶ 87-88. Defendant has not clearly demonstrated acceptance of responsibility for the offense to warrant a reduction by two levels under USSG § 3E1.1. *See* Revised PSR ¶ 19. Defendant's total offense level is 20.

Given a total offense level of 20 and a criminal history category of III, the Guidelines suggest a term of imprisonment of 41 to 51 months. USSG Ch. 5, Part A. All parties agree with this Guidelines calculation. *See* Revised PSR ¶ 12; Gov't Mem. at 4; Def. Mem. at 2. The Guidelines further recommend a term of supervised release of between one and three years, *id.* § 5D1.2(a)(2); a fine of between $15,000.00 and $150,000.00, *id.* § 5E1.2(c); and payment of the costs of prosecution, *id.* § 5E1.5. Defendant is ineligible for probation under the Guidelines. *See id.* § 5B1.1 cmt. n.2.

### 5. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), does not apply.

### 6. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this memorandum and order, and in consideration of the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### 7. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable to Defendant's case.

## II. Special Conditions of Release Analysis

The Court next addresses Probation's proposed special conditions of release.

### A. Legal Standard

District courts have broad discretion in imposing conditions of supervised release. *See United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018). The Court must follow the statutory procedure set forth in 18 U.S.C. § 3583(d) when imposing special conditions of supervised release. Special conditions of supervised release must: (1) be "reasonably related" to certain statutory factors set forth in § 3553(a)—specifically, the nature and characteristics of the offense and the history and characteristics of the defendant, § 3553(a)(1), the need to afford adequate deterrence to criminal conduct, § 3553(a)(2)(B), the need to protect the public from further crimes of the defendant, § 3553(a)(2)(C), and the need to provide the defendant with necessary training or correctional treatment, § 3553(a)(2)(D); (2) "involve[] no greater deprivation of liberty than is reasonably necessary" to implement the statutory purposes of sentencing; and (3)

are consistent with pertinent policy statements issued by the Sentencing Commission. 18 U.S.C. § 3583(d); *see also United States v. Myers*, 426 F.3d 117, 124 (2d Cir. 2005).

**B. Analysis**

Probation has proposed four special conditions of release to follow Defendant's sentence:

> <u>Condition 1</u>: "Defendant shall participate in a mental health treatment program, to include anger management . . . .";
>
> <u>Condition 2</u>: "Defendant must comply with a search condition . . . .";
>
> <u>Condition 3</u>: "Defendant must undergo a psychosexual evaluation . . . .";
>
> <u>Condition 4</u>: "[D]efendant shall comply with any applicable state or federal sex offender registration requirements . . . ."

Revised Probation Sentencing Recommendation at 1, ECF No. 183-1. The Government has not taken a position with respect to any of the proposed special conditions. The only conditions in dispute are Condition 2 (search condition), Condition 3 (psychosexual evaluation), and Condition 4 (applicable sex offender registration). The Court addresses the proposed special conditions in turn.

**1. Condition 1**

Condition 1 states "Defendant shall participate in a mental health treatment program, to include anger management, as approved by the Probation Department." *See* Probation Mem. Regarding Recommended Supervised Release Conditions ("Probation Supervised Release Mem.") at 2, ECF No. 183-2. Defendant does not oppose Condition 1 (mental health treatment), and this Court finds this special condition is warranted given Defendant's history of depression and aggression.

### 2. Condition 2

Condition 2 requires Defendant "submit his or her person, property, house, residence, ... computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media .... to a search conducted by a United States probation officer ... only when reasonable suspicion exists. ..." *See* Probation Supervised Release Mem. at 2-4. Defendant opposes this search condition to the extent it authorizes Probation to search his computers, other electronic communications, data storage devices, or media. Def. Mem. at 6. The Second Circuit has repeatedly upheld search conditions based on a defendant's current offense and prior criminal history, as well as the need to protect the public and further the objectives of sentencing. *See, e.g., United States v. Franco*, 733 F. App'x 13 (2d Cir. 2018) (summary order) (upholding computer search condition for defendant who used computers in prior convictions for aggravated identity theft and access device fraud). Given Defendant's current offense of conviction and his extraordinary, extensive history of possessing weapons and contraband, the proposed search condition is warranted to protect the community, to deter further criminal activity, and to support officer safety. Moreover, a complete review of the record reflects a need to deter Defendant from engaging in illicit activity involving computers, data storage devices, and other electronic communications. Defendant's activity, including his most serious offenses, such as his 1998 conviction for robbery in the first degree, have involved other individuals, suggesting a need to monitor any attempts to conspire with others to commit additional crimes. Any search of Defendant would only be conducted upon reasonable suspicion—inflicting no greater deprivation of liberty than necessary to effectuate the sentencing objectives. *Compare United States v. Eaglin*, 913 F.3d 88, 97 (2d Cir. 2019) ("imposition of a total internet ban as a condition of supervised release inflicts a severe deprivation of liberty").

The Court hereby imposes Condition 2 in its entirety following Defendant's term of imprisonment.

### 3. Condition 3

Condition 3 states: "[D]efendant must undergo a psychosexual evaluation at the direction of the Probation Department." Probation Supervised Release Mem. at 4. Defense counsel argues such an "intrusive" condition is inappropriate here because Defendant has not been convicted of a sexual offense nor has he faced any allegations of sexual impropriety. Def. Mem. at 7. However, the Second Circuit has upheld sex-offender specific treatment for defendants whose history and characteristics have involved sexual misconduct. *See, e.g., United States v. Dupes*, 513 F.3d 338 (2d Cir. 2008) (upholding sex-offender treatment for defendant convicted of securities fraud who was previously convicted of possessing child pornography); *United States v. Peterson*, 248 F.3d 79 (2d Cir. 2001) (upholding sex-offender treatment for defendant convicted of bank larceny who had prior conviction involving sexual abuse of his own disabled daughter). Here, Defendant was previously convicted in 1983 for a sex offense, which "involved the defendant forcibly removing the pants off of and having sexual intercourse with a 15-year old mentally challenged girl." *See* Probation Supervised Release Mem. at 4. According to Probation, Defendant was referred for treatment in 2014 but was not admitted because there was "too little time remaining on parole to engage in treatment." *Id.*; *see also* Revised PSR ¶ 71. For these reasons, the Court finds Condition 3 imposing a psychosexual evaluation is appropriate and involves no greater deprivation of liberty than is reasonably necessary.

### 4. Condition 4

Condition 4 states: "[D]efendant shall comply with any applicable state or federal sex offender registration requirements as instructed by the probation office, the Bureau of Prisons, or

any state registration agency in the state where he resides, works, or is a student." Probation Supervised Release Mem. at 5. A court may impose a special condition requiring sex offender registration following conviction for non-sex offenses for defendants who were previously convicted of sexual abuse of children. *See, e.g., United States v. Rosario*, 386 F.3d 166 (2d Cir. 2004) (upholding special condition requiring defendant to register as a sex offender based on prior conviction for attempted rape of a seven-year-old child).

Defense counsel argues such a condition is not warranted here because in Defendant's view, he is not required to register as a sex offender. *See* Def. Mem. at 7. New York's sex offender registration law, the Sex Offender Registration Act of 1996 ("SORA"), applies only prospectively or to persons on parole for qualifying offenses at the time SORA became effective. Because Defendant's sexual abuse offense occurred more than a decade before SORA was enacted, and he was not on parole for that offense in 1996, Defendant is not required to register as a sex offender. Def. Mem. at 7-8.

Although Probation concedes Defendant is not required to register as a sex offender under New York sex offender registration law, Defendant nevertheless must comply with the federal Sex Offender Registration and Notification Act ("SORNA"). *See* Probation Supervised Release Mem. at 5. The Attorney General's Final Rule on SORNA, dated January 29, 2011, applies retroactively to all sex offenders including those convicted before SORNA was enacted in 2006. *Id.* Here, proposed Condition 4 does not force Defendant to register as a sex offender; rather it "merely states that the defendant is to comply with any sex offender registration requirements *that apply* to him." *Id.* (emphasis added). The Court finds no reason to strike a special condition requiring Defendant to comply with the law. In light of Defendant's prior sex offense and the need to protect the public from any further crimes committed by Defendant, the

Court finds Condition 4, as written, is warranted in this case.

For the reasons set forth above, the Court concludes the proposed special conditions are reasonably related to the statutory factors set forth in this opinion, are proportionate to the need to afford adequate deterrence to criminal conduct, and involve no greater deprivation of liberty than necessary.

## CONCLUSION

A sentence of 51 months of incarceration, 3 years of supervised release, and payment of the $100.00 mandatory assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a).

The Court expressly adopts the factual findings of the Revised Presentence Investigation Report, barring any errors contained therein, to the extent they are consistent with this memorandum and order. The Court imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 1, 2019
Brooklyn, New York